UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | ) |
|            Plaintiff, | ) |
| v. | )    No. 1:25-cv-11276 |
| JOHN E. REID AND ASSOCIATES, INC., MICHAEL MASOKAS, THE ESTATE OF ARTHUR T. NEWEY, and JEANNE OLSON, as Trustee of THE WILLIAM AMOR REVOCABLE LIVING TRUST and Special Administrator of THE ESTATE OF WILLIAM AMOR, | ) |
|            Defendants. | ) |

## COMPLAINT

Federal Insurance Company ("Federal") hereby complains of John E. Reid and Associates, Inc. ("Reid"), Michael Masokas ("Masokas"), the Estate of Arthur T. Newey ("Newey"), and Jeanne Olson ("Olson"), as Trustee of the William Amor Living Trust (the "Amor Trust") and Special Administrator of the Estate of William Amor (the "Amor Estate"), as follows:

### Introduction

1. This is a declaratory-judgment action (28 U.S.C. § 2201) arising out of Underlying Lawsuits filed by Olson, as Trustee of the Amor Trust and Special Administrator of the Amor Estate, against Reid (a polygraph examination firm) and two of its former employees, Masokas and Newey. In the Underlying Lawsuits, Olson alleges that Masokas and Newey coerced William Amor ("Amor") into falsely confessing to setting a fire that killed Amor's mother-in-law. Olson

claims that, as a result, Amor was arrested, convicted, and spent almost 20 years in prison for crimes that he did not commit.

2. In this action, Federal seeks a judgment declaring that it has no duty to defend Reid, Masokas, or Newey against the Underlying Lawsuits, or indemnify them for any liability that they may incur, under liability insurance policies Federal issued from December 31, 1994 to December 31, 2000. As alleged in greater detail below, the policies do not cover the Underlying Lawsuits because: (a) the policies exclude coverage for "personal injury," including , false arrest, detention, or imprisonment, and malicious prosecution; (b) the Federal Lawsuit does not seek damages because of "bodily injury;" (c) Plaintiff does not allege an "occurrence"; (d) Amor's injuries were expected or intended; (e) several of the policies exclude coverage for injuries arising out of professional services, including polygraph examinations; and (f) several of the policies do not include Reid, Masokas, or Newey as insureds.

## Jurisdiction

3. Federal is a corporation that is incorporated under Indiana law and has its principal place of business in New Jersey.

4. Reid is a corporation that is incorporated under Illinois law and has its principal place of business in Illinois.

5. Masokas is an individual domiciled in Illinois.

6. Newey is a deceased individual who was domiciled in Illinois at the time of his death.

7. Amor is a deceased individual who was domiciled in Illinois at the time of his death.

8. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. The Court has original jurisdiction over this action under 28 U.S.C. § 1332.

## The Policies

10. Federal issued a series of liability insurance policies under Policy No. 3533-50-49 that were in effect for annual policy periods from December 1, 1994 to December 1, 2000.

11. All of the policies exclude coverage for damages that an insured becomes liable to pay for "personal injury," which is defined to mean injury, other than bodily injury, arising out of certain enumerated offenses, including false arrest, detention or imprisonment, and malicious prosecution.

12. Instead, as relevant here, each policy only covers damages that an insured becomes liable to pay for "bodily injury" occurring during the policy period that is caused by an "occurrence."

13. The policy in effect from December 1, 1994 to December 1, 1995 defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person." The policies in effect from December 1, 1995 to December 1, 2000 define "bodily injury" to include "physical injury, sickness, or disease, sustained by a person, including any resultant mental anguish, mental injury, shock, humiliation or death at any time."

3

14. All of the policies define "occurrence" to mean "an accident."

15. Notwithstanding the above, the policy in effect from December 1, 1994 to December 1, 1995 excludes coverage for "bodily injury" that is "expected or intended from the standpoint of the insured." The policies in effect from December 1, 1995 to December 1, 2000 exclude coverage for "bodily injury" resulting from "an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause bodily injury."

16. The policy in effect from December 1, 1994 to December 1, 1995, also excludes coverage for liability arising out of the rendering or failure to render certain professional services, including "polygraph examiners" and "private investigative services." The policies in effect from December 1, 1995 to December 1, 1997 more broadly exclude coverage for liability arising out of the rendition of any "professional service or advice."

17. Reid is included as a named insured under the policies in effect from December 1, 1994 to December 1, 1996. The policies in effect from December 1, 1996 to December 1, 1998 identify the named insured as "John E. Reid" and "John E. Reid Investigative Services, Inc.," and the policies in effect from December 1, 1998 to December 1, 2000 identify the named insured as "John E. Reid."

18. Finally, the policies obligate Federal to defend an insured against any suit seeking covered damages. Federal, however, has no obligation to defend an insured (or anyone else) against a suit seeking damages that are not covered.

**The Underlying Lawsuits**

19. On February 27, 2020, Amor filed a complaint against Reid, Masokas, and Newey in the United States District Court for the Northern District of Illinois, entitled *William Amor v. John Reid & Associates, Inc., et al.*, Case No. 1:20-cv-01444 (the "Federal Lawsuit").

20. On April 1, 2021, Amor filed a first amended complaint in the Federal Lawsuit.

21. On January 16, 2025, Olson, as Trustee of the Amor Trust,[1] filed a motion for leave to amend the complaint in the Federal Lawsuit.

22. On March 12, 2025, the court granted Olson's motion for leave to amend the complaint, to the extent it is unopposed. The motion was otherwise denied because (1) Olson did not establish good cause based on lack of diligence in seeking amendment, (2) the purpose of the amendment was in bad faith as Olson was seeking to add a claim to create coverage under an insurance policy, and (3) amendment would cause undue prejudice.

23. Following the court's denial of leave to amend in the Federal Lawsuit, on March 20, 2025, Olson filed a complaint against Reid, Masokas, and Newey in the Circuit Court of Cook County, Illinois, entitled *William Amor Revocable Living Trust v. John Reid & Associates, Inc., et al.*, Case No. 2025L003952 (the "State Lawsuit") (collectively with the Federal Lawsuit, "the Underlying Lawsuits"). On July 8, 2025, Olson, as Special Administrator of William Amor's

---

[1] Amor passed away on January 31, 2023, and, shortly thereafter, Olson moved to substitute herself as plaintiff in the Federal Lawsuit.

5

Estate, filed a first amended complaint. The first amended complaint is the operative pleading in the State Lawsuit.

24. On May 2, 2025, Olson filed a second amended complaint in the Federal Lawsuit. The second amended complaint is the operative pleading in the Federal Lawsuit.

25. In the complaints, Olson alleges that, on September 10, 1995, a fire occurred at Amor's residence in Naperville, Illinois, and that Amor's mother-in-law died as a result of the fire.

26. Olson further alleges that Naperville police took Amor to Reid's office where he was subjected to interrogation and polygraph testing administered by Masokas and Newey, who were employed by Reid.

27. Olson claims that, during the interrogation and polygraph testing, he was subjected to mentally, abusive, and coercive tactics by Masokas and Newey that caused him to falsely confess to setting the fire.

28. Regarding the Federal Lawsuit, Olson alleges that Defendants conspired, amongst themselves and the members of the Naperville Police Department, to cause Amor's prosecution based on a coerced confession. Olson further alleges that Defendants committed overt acts including the fabrication and unlawful coercion of Amor's "confession," and the falsification of witness statements in police reports.

29. In the State Lawsuit, Olson alleges that Masokas' and Newey's conduct, which ultimately led to Amor's false confession, includes, among other things, utilizing misleading, unfair polygraph questions; making false

6

misrepresentations regarding the review and results of the polygraph test; engaging in coercive interactions, conversations, and interrogations; improperly giving Amor suggestions in order to impact subsequent polygraph tests; depriving Amor of food or drink for hours; feeding Amor false information about how the fire started; and suggesting inculpatory statements for Amor to later make to the Naperville police.

30. Olson avers that, after Amor confessed, he was charged with first-degree murder and aggravated arson, convicted, and spent almost 20 years incarcerated for crimes that he did not commit.

31. Olson alleges that, on April 6, 2017, Amor's conviction was vacated after a state trial court concluded that his confession was "scientifically impossible."

32. Olson asserts that, on February 21, 2018, Amor was acquitted following a re-trial.

33. In the Federal Lawsuit, Olson alleges that Amor suffered emotional distress, mental anguish, humiliation, loss of liberty, loss of freedom of movement, loss of enjoyment of life, loss of consortium, and other non-pecuniary losses.

34. In the State Lawsuit, Olson alleges that Defendants' misconduct caused Amor to endure wrongful imprisonment and exposure to hazardous and harmful prison conditions from 1997 through 2017. As a result, Amor allegedly suffered physical injuries, including severe and traumatic bodily harm, illness, and the development of chronic health conditions. These conditions are said to have

arisen from prolonged exposure to industrial cleaning chemicals, mold, temperature fluctuations, secondhand smoke, and various illnesses, as well as poor nutrition, inadequate medical care, emotional distress, physical pain, and a weakened immune system. Amor's injuries allegedly culminated in his death on January 31, 2023.

35. Olson seeks compensatory damages, costs, attorneys' fees, punitive damages, and any other relief the court deems just and appropriate. However, in the Federal Lawsuit, Olson acknowledged, in her response to Defendants' motion to dismiss and bar recovery pursuant to the "single recovery doctrine," that the doctrine precludes Olson from recovering additional compensatory damages beyond the $25.5 million Olson recovered from the City of Naperville for injuries suffered as a result of Amor's wrongful conviction. Because Defendants' argument sought to limit the type of damages recoverable and relied on materials outside of the pleadings, the Court construed Defendants' request to bar the recovery of compensatory damages as an unopposed motion *in limine* and granted the motion as construed.

## The Instant Coverage Dispute

36. Reid, Masokas, and Newey requested coverage under the policies for the Underlying Lawsuits, including a defense and indemnity for any liability that they may incur for Amor's alleged injuries.

37. Federal has denied coverage for the Underlying Lawsuits, including any obligation to defend Reid, Masokas, and Newey or to indemnify them for any liability they may incur.

8

38. Olson is named as a defendant in this lawsuit because, under Illinois law, an injured third party is indispensable when an insurer sues an insured for a declaratory judgment defining coverage.

## Count One
## Declaratory Judgment – No Duty to Defend

39. Federal adopts by reference the allegations pleaded in paragraphs one through thirty-eight of its complaint.

40. An actual controversy exists between Federal, on the one hand, and Reid, Masokas, and Newey, on the other, concerning whether Federal owes coverage under the policies for the Underlying Lawsuits, including whether Federal must defend Reid, Masokas, and Newey.

41. No coverage exists under the policies, and Federal has no duty to defend, for the following reasons:

42. *First*, all of the policies exclude coverage for "personal injury," including, as relevant here, Amor's injuries allegedly resulting from his false arrest, detention or imprisonment, or malicious prosecution.

43. *Second*, coverage is limited to damages for "bodily injury" or "property damage." Olson does not allege any damages because of property damage in either the Federal Lawsuit or the State Lawsuit. Furthermore, Olson's allegations in the Federal Lawsuit related to emotional distress, mental anguish, and humiliation do not qualify as bodily injury without physical injury. Additionally, Olson is not seeking damages because of "bodily injury" in the Federal Lawsuit. Plaintiff recently acknowledged that the single recovery doctrine precludes Olson

from recovering additional compensatory damages, and asserts she is seeking punitive damages, attorneys' fees, and potentially nominal damages. None of these qualify as damages because of "bodily injury." The injuries alleged in the State Lawsuit—including physical harm, disease, diminished immune function, emotional distress, and death—may fall within the policies' definition of "bodily injury," but were not caused by an "occurrence" (as discussed below).

44. *Third,* to the extent the injuries in the State Lawsuit qualify as "bodily injury," Amor's alleged injuries did not result from an "occurrence." In the State Lawsuit, Olson alleges that Defendants coerced a false confession with the intent to cause Amor's imprisonment and exposure to harmful prison conditions. These alleged actions are not accidental in nature, and therefore do not constitute an "occurrence" under the policies.

45. *Fourth,* even if Olson did seek to recover damages for "bodily injury" caused by an "occurrence," the "expected or intended injury" exclusions contained in the policies at issue bar coverage for the claims asserted in the Underlying Lawsuits. The 1994-95 policy includes an exclusion for bodily injury "expected or intended from the standpoint of the insured." The 1995-2000 policies contain an exclusion for bodily injury resulting from an act that is either intended by the insured or can be expected from the standpoint of a reasonable person to cause such injury. Because Reid, Masokas, and Newey allegedly knew Amor was innocent but coerced him to falsely confess by mentally and emotionally abusing him during the interrogation, they expected or intended Amor's injuries to occur. Thus, Olson's claims would be excluded from coverage.

10

46. *Fifth*, no coverage exists under the policies in effect from December 1, 1994 to December 1, 1997 because Reid's, Masokas's, and Newey's alleged liability for Amor's injuries arises out of their rendition of professional services, including polygraph examinations and professional investigative services.

47. Sixth, coverage may not exist under the policies in effect from December 1, 1996 to December 1, 2000 because Reid is not a named insured under those policies and, consequently, neither Reid nor any of its employees, including Masokas and Newey, qualify as insureds under those policies.

## Count Two
## Declaratory Judgment – No Duty to Indemnify

48. Federal adopts by reference the allegations pleaded in paragraphs one through forty-seven of its complaint.

49. An actual controversy exists between Federal, on the one hand, and Reid, Masokas, and Newey, on the other, concerning whether Federal owes coverage under the policies for the Underlying Lawsuits, including whether Federal must indemnify Reid, Masokas, and Newey for any liability that they may incur.

50. For the same reasons alleged above in paragraphs forty-one to forty-seven, Federal has no duty to indemnify Reid, Masokas, and Newey for any liability they may incur in the Underlying Lawsuits.

## Prayer for Relief

WHEREFORE, Federal respectfully requests that the Court enter a judgment in its favor, declaring that Federal has no duty under the policies to (a) defend Reid, Masokas, or Newey against the Underlying Lawsuits or (b)

11

indemnify Reid, Masokas, or Newey for any liability that they might incur to pay damages for Amor's alleged injuries.

Dated: September 17, 2025

Respectfully submitted,

By: /s/ Christopher A Wadley
Christopher A. Wadley
WALKER WILCOX MATOUSEK LLP
One N. Franklin St. Ste. 3200
Chicago, IL 60606
Telephone: (312) 244-6700
Facsimile: (312) 244-6800
Email: cwadley@walkerwilcox.com
**Attorney for Federal Insurance Company**